UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DANIEL SCHALLIOL,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. SACV 17-1219 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on July 17, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On March 6, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

# PROCEDURAL BACKGROUND

Plaintiff filed application for disability insurance benefits and supplemental security income benefits. In both applications, Plaintiff alleged an onset date of May 1, 2011. Administrative Record ("AR") 13. The applications were denied. AR 13, 92-93. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On February 2, 2016, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 37-67. On March 1, 2016, the ALJ issued a decision denying benefits. AR 10-25. On May 15, 2017, the Appeals Council denied review. AR 1-5. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2016. AR 15. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of both the lumbar with disc protrusion and the cervical spine. AR 15.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of medium work. He could lift/carry up to 50 pounds occasionally and up to 25 pounds frequently; sit, stand or walk for six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes and scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. AR 18-19. Plaintiff could not perform any past relevant work but there were jobs that existed in significant numbers in the national economy that he could perform such as hand packager, machine feeder and industrial cleaner. AR 23-24.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

## C. Medical Source Opinions

Plaintiff argues that the ALJ failed to consider properly the opinions of Dr. Niska, an examining physician, and Dr. Khan, a treating physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).

An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The ALJ gave some weight to the opinion of Dr. Niska except that the ALJ "further limited the claimant's capacity for postural activities to an occasional basis to accommodate his subjective complaints." AR 22. Plaintiff reported to Dr. Niska on August 7, 2014 that he was not taking any medications. AR 21, 365. Dr. Niska noted that Plaintiff had a normal gait with no signs of limp or antalgia. He was able to squat, sit in a chair comfortably and rise from a sitting position with mild difficulty. Plaintiff had decreased range of motion in the neck and cervical spine with rotation limited to 50

degrees bilaterally. There was moderate tightness in the trapezius muscles bilaterally and fairly mild tenderness to palpation. There was decreased range of motion with pain on forward bending. Straight leg raise was negative. AR 366. The upper and lower extremities were within normal limits with 5/5 motor strength. AR 366-68. Dr. Niska diagnosed degenerative disc disease both of the lumbar spine with disc protrusion and of the cervical spine based on the MRI reports, subjective findings of lower back and neck pain, and decreased range of motion. Dr. Niska concluded that Plaintiff could lift/carry up to 50 pounds occasionally and 25 pounds frequently. He could sit for eight hours and stand or walk six hours out of an eight-hour workday. He could frequently bend or crouch and had no overhead restrictions. AR 369.

Plaintiff argues that the ALJ should have addressed how far Plaintiff could bend or stoop. Dr. Niska did not include limitations on the extent of Plaintiff's bending or stooping in his functional limitations and, therefore, Plaintiff is not complaining of an error in considering Dr. Niska's opinion. Dr. Niska noted decreased range of motion to middle of the tibia with forward bending. AR 366. However, there is no indication in Dr. Niska's opinion that this observation would have any effect on Plaintiff's ability to work.

Plaintiff further argues that the ALJ improperly rejected Dr. Khan's findings of reduced range of motion in the neck, low back and hip in 2011. AR 297-98; *see also* AR 327-29 (chiropractor). Like Dr. Niska, however, Dr. Khan also did not include restrictions on how far Plaintiff could bend or stoop.

On April 17, 2011, Plaintiff was pulling a pallet with a coworker when he slipped on a wet floor and fell on his left hip with his right foot underneath the pallet jack. He yelled to his coworker, who did not understand and pushed the pallet jack over Plaintiff's right foot, injuring his toe. Plaintiff was referred for treatment at Kaiser Permanente and underwent physical and chiropractic therapy. Plaintiff's employer did not honor his modified work duties, so Plaintiff continued doing his regular work duties through July 4, 2011, when he was terminated. AR 292-93.

On September 1, 2011, Dr. Khan noted moderate paraspinal tenderness, muscle guarding and spasms from C1 through T1. Shoulder compression test was positive. Motor strength was 5/5 in the upper extremities. AR 297. Dr. Khan found reduced range of motion in the cervical spine of 30/50 flexion, 40/60 extension and 20/80 rotation. Cervical spine lateral tilt and flexion was normal. With respect to the lumbar spine, Dr. Khan found moderate paraspinal tenderness, muscle guarding and spasms at all levels through L5/S1. Plaintiff had reduced range of motion of 25/60 flexion, 15/20 extension and 20/30 lateral bending. Lumbar spine rotation was normal. AR 298. Plaintiff's left hip was tender with normal range of motion except for 10/30 thigh and hip extension. AR 299. Dr. Khan prescribed pain medication and physiotherapy, and recommended MRIs of the cervical spine, lumbar spine and hip. AR 300.

In Dr. Khan's report dated April 8, 2013, Dr. Khan stated that, through November 28, 2012, Plaintiff "was provided conservative treatment appropriate for his condition." AR 257. Plaintiff complained of occasional pain of 5/10 in the neck with radiation to the bilateral shoulders. The pain was made worse by bending and twisting the neck, and relieved by injections. AR 259. Plaintiff complained of constant low back pain at 7/10 with radiation to the left hip. The pain was made worse by bending and twisting at the waist. Plaintiff also complained of pain in the left hip at 7/10, made worse by twisting the leg. AR 260.

Dr. Khan reviewed the MRIs in 2011 and 2012. AR 258-59. On examination of the cervical spine, Dr. Khan noted tenderness on palpation and palpable myospasm of the paraspinal muscles, upper trapezius muscles and spinous processes at C2-C6 bilaterally. Range of motion was 35/50 flexion and extension, 30/45 lateral bending, and 55/80 rotation. Foraminal compression and shoulder compression were positive. AR 261, 264. With respect to the lumbar spine, Dr. Khan noted tenderness to palpation and palpable myospasm of the paraspinal muscles and spinous processes at L1-L5 bilaterally. Range of motion was 30/50 flexion, 5/20 extension and 20/30 in lateral bending and rotation. There was tenderness to palpation at the sacroiliac joints

bilaterally. Straight leg raising was positive bilaterally. AR 261-62, 264-65. Dr. Khan found no tenderness, motor weakness or muscle wasting at the left hip, although there was reduced range of motion of 80/100 flexion, 30/40 internal rotation, 40/50 external rotation and 30/40 abduction. AR 262-63, 265. Motor strength was 5/5 in the upper extremities and 4+/5 in the lower extremities. AR 263.

Dr. Khan recommended work restrictions "solely to prevent unnecessary exacerbation of pain and re-aggravation which may lead to repeated periods of temporary disability, and/or result in increased permanent disability. . . . These are recommended on a prophylactic basis." AR 265. Dr. Khan recommended that Plaintiff be allowed to stretch as needed and be precluded from lifting greater than 10 pounds, repetitive bending, stooping or squatting activities; kneeling activities and sitting, standing and walking greater than one hour per day. *Id.* Dr. Khan recommended an active exercise program to maintain and/or increase range of motion, increase muscle strength, improve his level of occupational and social functioning and help integration into a productive workforce. AR 268.

Dr. Khan did not include restrictions as to how far Plaintiff could bend or stoop, and did not express an opinion that the reduced range of motion would affect Plaintiff's ability to work. Therefore, the ALJ did not err.[2]

---

[2] The ALJ gave little weight to the opinion of Dr. Khan. There was no diagnostic evidence corroborating Plaintiff's subjective complaints of radiculopathy or other neurological deficits. AR 21. An electrodiagnostic study in September 2011 found no evidence of entrapment neuropathy or active cervical radiculopathy in the upper or lower extremities. AR 248-53. The ALJ found that Dr. Khan's recommended limitations were excessive in light of Plaintiff's course of treatment at the time and were expressly made as a prophylactic measure. The ALJ found that Dr. Khan's recommended limitations did not reflect Plaintiff's residual functional capacity on a longitudinal basis and were inconsistent with his minimal whole body impairment rating and other medical source evidence. Subsequent records showed no diagnostic workups or treatment for the alleged conditions until Dr. Niska's evaluation on August 7, 2014. AR 21. The medical records in 2015 indicate normal neck and musculoskeletal examination. AR 383, 386-87. The ALJ did not err in discounting this portion of Dr. Khan's opinion.

### D. **Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 19.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible because those allegations are greater than expected in light of the objective evidence at the hearing level." AR 19. In addition, "the claimant's rather limited and conservative course of treatment to date is inconsistent with the alleged severity of his pain symptonms and related functional limitations; it diminishes the credibility of those allegations as a whole." AR 22. Plaintiff testified that he cannot work because the pain is "insane" and he has emotional issues. AR 46. Plaintiff testified that he used only

heat, ice packs and a muscle relaxer at night, three to four times per week, but that did not "completely remove the pain." AR 19, 47-48. As the ALJ noted and as discussed above, Dr. Khan provided what he characterized as conservative treatment for Plaintiff's pain through April 2013. AR 21. The ALJ further noted that medical records in 2014 and 2015 do not indicate treatment for neck, back or hip issues other than the muscle relaxer. AR 21-22. Plaintiff has not shown error.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: May 4, 2018

ALICIA G. ROSENBERG
United States Magistrate Judge